a delight to be in court. And we did you look? Oh, I'm not supposed to judge Randall. You look great on the screen. Thank you, Judge Greenway. Good morning. Morning, sir. Sorry. Sorry. My momentary informality. It's OK. OK. So we will start with the the Dawson case. Counsel. Good morning, Your Honors. May it please the court. My name is Renee Petropalo. I represent appellant Dorian Dawson. I'd like to request four minutes for rebuttal. Of course. Go ahead, please. I'd like to begin by responding to the court's focus questions. There is a split of authority on the question of whether the Federal Controlled Substances Act definitions apply to the guidelines definition of controlled substance offense in 4B 1.2B. Here, the parties simply accepted without developing the position that the undefined term distribution and 4B 1.2B. Does not incorporate the CSA's conduct definitions, and although there's support for that assumed position, which I can outline, we submit that the better course, given the present posture of this case, is to grant relief on the Rule 32 error and leave the parties to litigate application of the CSA on remand. But counsel, isn't there a case that we have, United States v. White, where we adopted the position that the CSA definitions control for the guidelines? And wouldn't it be bizarre, as Judge Sutton said, to say that violating the primary provision of the Controlled Substances Act turned out not to be categorically a controlled substance offense? I believe in White, Your Honor, that the court was talking about, do the guidelines incorporate state as well as federal offenses? And there's discussion of 994H, but I don't believe it explicitly resolved the question of whether the conduct is defined by reference to the CSA definitions. But isn't it pretty convincing that if Congress directed the Sentencing Commission to do this, to go according to the CSA in fashioning the guidelines, isn't that pretty persuasive? I don't disagree with you, Your Honor. It is persuasive. The problem that I have in this case is that this court generally has the discretion to affirm on any basis, but not on a basis that was waived and not when the government argued the opposite position below. The government argued Jackson, cited Jackson, which contains this proposition. I mean, this is just a different theory for the basic issue of what does distribution mean. They cited Jackson for a different proposition, not for the proposition that the CSA definitions apply to distribution. And they can't really have it both ways. We've accepted that the word distribution should be given its ordinary meaning. If you were to hold today that distribution should be defined by reference to the CSA, that would be issuing an opinion of first impression and speaking, weighing in on what's really a shallow circuit split at this point. And without briefing from either party advocating either position, the government said in one sentence in its brief that the CSA definition should not apply. We have nobody arguing the opposite position, the Jackson position. And typically, this court prefers fulsome briefing, adversarial briefing, before weighing in on questions like this. That would be the better course in this case, in my opinion. So you think that we should have briefing on this issue of whether there's a categorical match between distribution under the CSA on the one hand and delivery under 830 on the other? That actually hits the nail on the head, Your Honor. If you were to hold that the CSA definitions apply, the next logical question is, is the Pennsylvania statute coextensive with the federal definition? We've not addressed that question because we've both accepted that the CSA definitions don't apply. So I believe that remand for the district court to decide that in the first instance, for the parties to litigate that in the first instance, would be the proper... Can there be any argument that the two aren't a match with respect to this attempt aspect? Yes, Your Honor. Judge Sutton, in his Havis dissent, he looks to the term attempted transfer in 841, and he opines that attempt and attempted transfer means ordinary attempt, not legal attempt, meaning intent plus a substantial step. This court, in Daniels, at page, I believe, 166, and in Glass, looks to the felony drug offense 830, Pennsylvania's 830 offense, says that 830 defines delivery to include attempted transfers, and then says attempt and attempted transfer in 830 requires intent plus a substantial step, which leads me to conclude that Pennsylvania's definition of attempted transfer in the context of 830 is broader than the federal definition. And that's why Nasir was right. It seems to be almost an absolute match, no? The words, Your Honor, yes, are an absolute match, but you look at how the state defines it. And even in the Sutton concurring opinion in Havis, he doesn't hold that the Tennessee delivery case is coextensive because the words match. He leaves that question for another day, and that question is actually in front of the Sixth Circuit right now. But doesn't Jackson define Havis? Jackson is a Sixth Circuit. So Jackson is the Sixth Circuit of the 2020 opinion? Jackson is a Sixth Circuit, and it doesn't really refine Havis. It says that we're going to apply the Controlled Substance Act definitions to the term distribution, and it's not dealing with the Tennessee statute that was at issue. I believe I'm right in saying that that was at issue in the Havis opinion. The Jackson opinion is dealing with the Kentucky statute, and it allows the parties to make the argument, they made it below and they made it on appeal, that the Kentucky statute wasn't a match, even accepting that you apply the CSA definitions to the guideline term distribution. We haven't had that opportunity here. Let me ask you this question that goes to what Judge Rendell asked. So both she and I have queried on whether it's a categorical match, right? Suppose this panel agrees that it is a categorical match. In your view, rather than come to that conclusion, we need to remand so you have an opportunity to specifically address that? I wanted to make sure I understood your position. To be clear, if you were to hold today as a matter of first impression that the CSA definitions apply, then the open question, the question not addressed by the parties, is whether the Pennsylvania statute is a match to the federal definition of distribution, and that's the question I believe should be sent back to the district court. Why can't we do that? You could, but you'd be doing it without briefing from the parties on that point. And the other prong of this is, Your Honors, you don't have an opinion by the district court, right? Because this wasn't an issue before the district court. The district court thought he was bound by Hightower. Hightower was overturned while this case was pending on appeal. It's just another reason why this case should go back to the district court for the matter to be developed in the proper form and so that Your Honors have fulsome briefing, adversarial briefing on the point. And would you say the same thing about Rule 32? I'm sorry? Rule 32, you want a remand on that? Rule 32 does, in fact, require a remand, Your Honor. There was a controverted question of the causation of L.B.'s death. The court didn't rule on that matter, and he didn't expressly disclaim reliance on that matter. And Rule 32 is a mandatory rule, and it's strictly applied, and so we'd ask for a remand. You may be right on that, but he didn't. The government says that it abandoned that argument. I'm having trouble following the government's argument on that. Maybe you could help. Right. That's not a fair interpretation of the record, Your Honor. The controverted question was discussed, and the court says, I know the government wants to argue this because it was in their pleadings. For the question to no longer have been controverted at that moment, the government should have said, if they believed it, that Mr. Dawson was not responsible for the overdose death. I don't think that's a correct reading of the record. I mean, this was in the sealed portion of the sidebar, and defense counsel said, well, we request a ruling if you're going to consider it. And it was clear that the judge didn't consider it, and he said repeatedly that it's not relevant. So shouldn't the government – you say this was discussed. It was discussed and put to the side, actually, and it was never raised again. If that's the case, that something should have been decided, why under Flores-Meyer wasn't defense counsel obligated at the end to say, oh, and, Your Honor, you failed to rule, to discuss your view about the causation issue and its relevance. I mean, otherwise you're sandbagging the court, because this was never an issue in the sentencing hearing itself. Two points, Your Honor. When it was the government's turn to speak, he specifically said we stated our position in the sentencing memorandum and we stand by it. He didn't need to – And then continue to argue all the things that he cared about. I think if you look at the record – Never alluding to it in the slightest. The government incorporated the briefing by reference at that moment, and the briefing was – it was almost entirely focused on this question of causation. And if I can say one other thing – Well, but if you're going to say a district court judge needs to reach back to the sentencing memorandum – No, Your Honor. When counsel has clearly not referenced it in argument. I absolutely don't think he needs to reach back to the sentencing memorandum and ignore everything else that happens. Nobody withdrew that controversy, and defense counsel made clear that the court's ruling on the PSR did not resolve the question at appendix pages 225 and 229 to 30 because he said again to the court after that, Judge, we want to make sure that you're not considering this death as a factor. It's a tragic circumstance. I've made that point in my pleadings. Nobody withdrew the controversy. It existed. But the court said it has no relevance here. It's not relevant. When he was talking about relevance, I believe he was talking about the adoption of the case federally. I mean, there were two different ways of looking at this. But the question of causation and whether Mr. Dawson caused that death was the focus of this proceeding from the time of the guilty plea throughout the sentencing transcripts. Can I get back to the main argument, which we haven't really talked about, and that is ordinary meaning. You're saying we shouldn't say CSA is incorporated, so you're saying this ordinary meaning of distribution would not include attempted transfer as part of delivery, as part of distribution. If I distribute leaflets for a campaign and I put them in front of everybody's door and a storm comes and they blow away, I think I still distributed them. If I send drugs through the mail and they go to the mail and the police intercept them before they get to their destination, I've attempted a transfer, which constitutes a delivery, which constitutes a distribution. How is that not the ordinary meaning? You've distributed those pamphlets and you've distributed those drugs. I think we're focusing on the end result, the receiver, and we don't focus on did the receiver actually take them into his possession. But it's the crime of distribution. You're saying you can't be convicted of the crime of distribution based upon that. I'm saying that the ordinary meaning of the word distribution, and the parties are agreeing on this dictionary definition, which is to disperse, to dispense, doesn't include an attempted transfer. But isn't that what the leaflets and the drugs are? That's an attempted transfer. I think that's an actual transfer. The person just didn't receive that item for whatever reason, but it's an actual transfer. But you transfer to someone. Right. You transfer to someone. You've transferred possession. But an attempt is a different animal. And, again, we've got the Glass and Daniels opinion saying we're talking about an attempt and a substantial step toward making a transfer. You're right. An attempt is a different animal, which is why when you look at the statute, it's not an inchoate offense, right? I think that's where we're at. And just to go back to the hypothetical, Judge Rendell stole my hypothetical, right? She used the mail. My hypothetical was going to be, you know, drugs are a by-bust, right? I mean, you know, a by-bust still is distribution, even though it hasn't happened, right? So you have the drugs, you go to the appointed place, and the distribution doesn't happen, but you still can be charged with distribution even though it doesn't happen. The attempted transfer here is the same. You don't need the completed act for it to be distribution or in this attempt, you know, the attempted transfer. Again, that's sort of kind of assuming that the definition in the Controlled Substances Act applies for a delivery to be attempted constructive. Well, actually, I thought we were putting that aside for a moment. I thought you were just looking at the plain definition. And if you just look at the plain definition, why wouldn't it be so? Then, again, I have to fall back on Nassir, which says you look at the text in the ordinary meaning, and Nassir said the word distribution doesn't encompass an attempted offense. Nassir was different. Nassir had to do with an inchoate crime. We hear if you commit the crime of distribution by attempting to transfer, that doesn't make it an attempted crime. It's a completed crime of distribution. Nassir is totally distinguishable. Right. Nassir is distinguishable. I'm not saying it's controlling. I'm saying it advances my position. And our ordinary meaning argument is essentially based on the dictionary definitions what the government agrees would control under an ordinary meaning. And I'd be asking you to follow the path laid out by the Fourth Circuit in Ward and in Jackson, which followed exactly the path that I laid out in my opening brief. Dr. Rendell, do you have anything further? I have nothing further. Thank you. Great. We'll have you on rebuttal. Thank you so much. Good morning, Your Honors, and may it please the Court. Adam Hallowell for the United States. Possession of heroin with intent to deliver under Pennsylvania law is a controlled substance offense under the Career Offender Guideline. The plain text of those provisions comports with their structure, history, and purpose. And for that reason, and because there was no violation, certainly not a plain violation, of Rule 32, this Court should affirm. Most of the discussion this morning has started with the context of the distribution provision in 4B1.2. And I'd like to start there and make two main contextual points about the Career Offender Guideline. First, Congress in Section 994H instructed that the Career Offender Guideline should incorporate the federal crime of distribution under 841, which, just like A30, includes attempted transfer of a controlled substance. Did you mention that in your brief, Mr. Hallowell? Did you urge that in your brief? We did not refer to Section 994H in our brief, Judge Rendell, but we did refer to the fact that Section 841 mirrors, as Your Honors have described, the Pennsylvania offense that's described here. And we talked about how unusual it would be for the Career Offender Guideline not to encompass that federal offense. And the fact that Congress specifically directed, as this Court pointed out in its focus question, that that federal offense be incorporated in the Career Offender Guideline is a key signal that attempted transfer should be a part of the Career Offender Guideline. So you believe that it's a categorical match between the CSA definition of distribution and the A30 definition of delivery?  There's no Pennsylvania case law explaining that attempted transfer might be defined in some way that falls outside of either the federal offense or of the concept of distribution that's in the Guideline. So what about your colleague's argument that this would be a matter of first impression and that, at least in the first instance, we should return it to the District Court in order for a more fulsome discussion? I don't think that this Court needs to do that. I don't think it's a proper approach because the question of whether A30 was a controlled substance offense, that was squarely presented to the District Court. That legal question was before the District Court, and it is before this Court. But your colleague says that the gloss that Pennsylvania has put on the attempt concept makes the Pennsylvania statute broader than the federal, so that needs to be briefed. Do you agree with that? I don't agree with that. I don't believe there's any – there's no Pennsylvania case law that Mr. Dawson has pointed to that would tell us there's some idiosyncratic meaning of attempted transfer. And that should be given its plain meaning, just as the federal crime should be given its plain meaning. And it's clear as the discussion – Although he hasn't had the opportunity to – that issue hasn't really been presented. He hasn't had the opportunity to really brief that. I think he has had the opportunity, to be frank, Your Honor, but that is incorporated in the legal issue that both parties have briefed fulsomely before this Court, whether distribution under the guideline and whether the federal offense are somehow different from the Pennsylvania statute. And the Pennsylvania statute is not an outlier. Many, many jurisdictions, not just Pennsylvania, have defined delivery or distribution to include attempted transfer. New Jersey does it. Delaware does it. The Virgin Islands do it. This is all language that was taken from the Uniform Controlled Substances Act in the 1970s. And so there's no indication that Pennsylvania is an idiosyncratic state in defining the crime of delivery. And so for that reason, it would be speculation for this Court to say Pennsylvania is outside of the distribution. What about your colleague's argument that, putting aside the CSA for a moment, when you look at the plain meaning of transfer and delivery, it would lead to a different result? Or that, well, I guess the predicate is that you both agreed that you don't look to the CSA in the first instance and that you should look to the plain meaning. And if you do look at the plain meaning, you'd come to a different result. That's what I'd like a reaction to. Sure. I'd start with a caveat on the premise, Your Honor, which is that we do not agree that the Controlled Substance Offense Act, the federal act, is irrelevant here. We said in our brief that the CSA definition does not control the guideline definition, and that is our position. There's no cross-reference in the guideline that says distribution as defined in Section 841. But the federal act is certainly part of the context that this Court should be looking to in determining what distribution and what the guideline means, particularly because the guideline was crafted in response to this congressional directive. So I'd like to start with that understanding. As for the plain meaning, I think that it's not correct to argue, as Mr. Dawson does, that attempted transfer, the fact that that phrase is in the statute necessarily makes Pennsylvania delivery an inchoate crime. The definition includes attempted transfer, but it is a completed delivery, let alone a completed possession with intent to deliver, if that's the conviction which Mr. Dawson has those convictions. So there are many statutes that define a coate crime, a completed crime, with one element being an attempt to do some action. Aggravated assault can be an attempt to cause serious bodily injury. That doesn't make aggravated assault an inchoate crime. And so the fact that Pennsylvania has said completed or constructive or an attempted transfer to another person means that this is something different from Section 901 of the Pennsylvania law, which is all criminal attempts. That's the general criminal attempt statute, which, as counsel said, is simply a substantial step plus an attempt to commit the crime. That's not what attempted transfer sweeps in. And so pointing out the distinction between an overall attempt and attempted transfer, that brings us back to what I believe Judge Rendell said about Nassir. That Nassir is totally distinguishable here because Nassir was talking about exactly those inchoate crimes. Nassir involved the predicate of an attempt to possess with intent to distribute or attempt to deliver controlled substances under Virginia law. It was not the general Virginia possession with intent statute. And so that statute this court held was not swept in by the text of the guideline. And, of course, it only fell under the commentary. So that statute, the Virginia statute 18.257, that's analogous to the federal statute 846. It's analogous to Pennsylvania 901. Those can be separable from the substantive co-eight provisions of 841 and of Pennsylvania 830. So for that reason, because sweeping in all of those statutes, and this is my second point, would really leave the career offender guideline with little to no work to do in controlled substance cases. Because 841 wouldn't be a predicate and it also wouldn't be an instant offense under distribution, certainly, under Mr. Dawson's view. And possibly not possession with intent to distribute. And so not only would there be very few predicates, there would also be very few instant offenses that could lead to the controlled substance offense definition being triggered in 4B1.2. What about the Rule 32 issue? Yes, Your Honor. I read four or five instances of Mr. Capozzi specifically asking the judge to rule on this, on the causation issue, if he were going to consider it. And as near as I can figure out, the district judge didn't give a reason for not ruling on it. And, in fact, didn't rule on it. Well, Your Honor, I'd start with the premise of Mr. Capozzi's question. In the sealed portion of the transcript, he said, we'd ask for a ruling if the court is going to rely on that. That's at page 265 in the sealed transcript. And the court's respond was to indicate that he was not going to rely on that issue, at least absent further briefing by the government. The district court said, I suppose the government is free to do that, free to argue this causation issue. And then it's up to me to decide whether or not to consider it. And that was a signal to both parties that the ball was in the government's court at that point. Unless there was further action, further argument made by the AUSA on the causation issue, that would not be a factor in the district judge's sentencing considerations. And as the transcript shows, it was not a factor in the district judge's sentencing considerations. How do we know that? We know that because of what the district judge said as he was explaining his decision to impose the sentence. He varied downward from the guideline range by almost four years. And he stated that there are many serious issues with Mr. Dawson's criminal history, with the fact that he was possessing these drugs with intent to distribute while he was on parole for a serious state prison sentence, four to ten years. And he indicated that the mitigating circumstances that Mr. Dawson had argued, he did not find very convincing. The need to provide for family, you know, Judge Sircone stated those are circumstances faced by many people who don't go out and engage in drug trafficking. So those... Was there an obligation, though, on the government to abandon that rule, that argument?  No. Rule 32 doesn't impose that requirement. Unless the issue is controverted at sentencing, first of all, the government, you know, neither party needs to place... The commission that the government submitted pre-sentencing, though, advocated that position. Yes, but the issue was no longer controverted at sentencing. And the government did not press that position at sentencing. I point to the Singh case of this court, where exactly the same situation that we had here. There it was defense counsel who had a certain factual dispute that he was pressing before, in sentencing memoranda, in letters to... Or in a letter to the court, at least, before the sentencing argument. That was a factual dispute. But at the sentencing hearing itself, defense counsel shied away from that position, and he did not engage in argument about that factual dispute. And Rule 32 did not require the district court to go back into the sentencing memoranda and unearth this dispute that wasn't before it at sentencing. That's what this court held in Singh. And a case like the Metro case, more recently, where this court said, if the issue had been moot at sentencing hearing, then the court would not have been obligated, under Rule 32, to consider it. That's how this court has interpreted Rule 32. And it would really put district judges in a bind to require them to consider, not just arguments that the parties are pressing in person at sentencing, but arguments that may be buried in the district court paper submissions. And so the fact, especially given the fact that the district court here acknowledged the causation issue, and he said, if the government argues it, then it's up to me to consider it. That was a signal to both sides that kind of a truce was being called here. It's worth pointing out, Judge Zureka, that the causation issue was not one that the government brought up on its own. This was the elephant in the room. Whether L.B.'s overdose death had been caused by Mr. Dawson, that was a charge that was brought in state court before the federal possession with intent to distribute charge was brought. And so at the plea hearing, Mr. Dawson made clear he was pleading only to the federal offense of possession with intent to distribute. He was not admitting responsibility for the overdose. And in his sentencing memorandum, which was filed first, he also argued that I did not cause this overdose death, and here's evidence that suggests why I didn't cause that. And the government then responded to that in its sentencing memorandum. And so potentially, if Mr. Dawson had wanted to get a ruling one way or the other from the district judge, he could have pressed that position further, to use the language of Singh, that he could have said, I want a ruling, yes or no, whether you believe by a preponderance that I caused this overdose death. He did not do that, and he did not engage in all kinds of other argument, as did the government, without suggesting that he believed the causation issue was still at issue. And so for that reason, we believe that the district court's approach to this matter settled the causation issue. It did not leave anything for the parties to argue. It certainly was not a plain error that given that there was no outright objection to how the district court handled Mr. Capozzi's query, there was no plain error for this court to reverse under Rule 52. Given our discussion this morning, should we be thinking about or considering the use of or application of glass here? I think that we should, Your Honor. I think that glass is a panel decision. It's binding on this panel, and it holds that A30 is a controlled substance offense under the guidelines. So this court, first and foremost, is bound by glass. That had to do with an offer to sell. That was a very different situation. So when you say it held that, it really held that an offer to sell is not encompassed. Well, respectfully, we disagree, Judge Rendell. At page 324 of glass, this court said that 780.113.A30 does not sweep more broadly than Section 4B.1.2, and it is a controlled substance offense. And in fact, that's the specific question that this court asked for briefing on in glass. It was an Anders case. An Anders brief was submitted, and this court said, we would like the issue to be briefed of whether A30 is a controlled substance offense under the career offender guideline. And so the specific argument was whether it's an offer to sell, but glass zeroed in on this attempted transfer language, focused about it, gave many different reasons for why attempted transfer still fell within distribution. And so that reasoning is binding, except to the extent that glass would conflict with Nassir, the later decided en banc case, but glass, as we've discussed, is a completely separate issue from Nassir. That was an inchoate offense. This is very clearly a coate offense. And so, and lastly, I'd like to point out that it would be very unusual, as the Supreme Court has said in Stokeling, Quarles, and in the Voisine case that Mr. Dawson cited, for this court to hold under the categorical approach that a federal definition of distribution did not fall within the laws of a wide variety of states. And that's exactly what this court would be doing if it held that A30 did not fall within the controlled substance offense definition and distribution in the career offender guideline. Although we ask this question for purposes of argument, there's been absolutely no briefing at all on any of this, because the district court decided this based on Hightower. So, I'm wondering whether we should have supplemental, I don't know if this needs a remand, but should we not at least have supplemental briefing on these issues? The government doesn't think that would be necessary, Your Honor, because the question before the district court was how to properly calculate the sentencing guideline range. And it did that based on Hightower, which was the law at the time. But the issue, of course there were arguments made, even in the district court, about A30 being outside of the proper application of the career offender guideline. And that's what the briefing has been up to this point. We've briefed the issue before argument of whether A30 falls within or outside of the guideline term of distribution. And so, a remand certainly isn't necessary if this court believes the guideline range was correctly calculated here. The court didn't err at any other step of Gunter. And we believe for all the reasons set forth in the briefing and in argument today that A30 does fall within the federal definition of the guideline of distribution. Okay. Thanks very much, counsel. Thank you. If I could just start with the Rule 32 issue. The government doesn't cite any authority for the idea that Rule 32 applies only to something that's controverted at during the sentencing hearing, because there is no authority. The cases it's talking about, it cites Singh and Perez where controversy goes away. In the Perez case, you had an affirmative statement from counsel that it was no longer, it said to the district court, I understand you to be saying you're not going to rely on this controverted fact. That's why the controversy went away, because the court complied with Rule 32. In Singh, there was no controversy because the court ruled, he made a Rule 32 ruling that the it was a denial of acceptance of responsibility. He accepted the probation officer's assessment, credibility. He made like a credibility determination. There was a Rule 32 ruling. There was no ruling consistent with Rule 32 here. And if it's even ambiguous, remand is required. The rule requires and the law requires an express disclaimer if the court isn't going to rely. We can't assume that the court didn't rely because the government only alluded to the argument in its brief and didn't expressly restate that argument in its brief. Then you're making the district court erring because it didn't at the end say, and oh, by the way, I said I would rule if the government was going to consider it. Government, you're not considering it, are you? I mean, you're putting it on the district court just to affirmatively say something so as not to err. That can't be right. The rule says the burden is on the district court once the parties bring the controverted matter to his attention. That's in Gomez. The rule puts that obligation on the court. And it's not a significant obligation. The rule is longstanding. It's mandatory. The language of the rule is clear. And defense counsel couldn't have done any more to alert the court to this controverted question. Well, it did alert and say we want you to rule if you're going to consider it. Isn't that pretty clear? But that's tracking the language of Rule 32 which says if you're going to rely on it, you need to rule. Otherwise, you need to expressly disclaim reliance. We don't assume that the controversy evaporated, particularly when that was the focus of the sentencing presentation of the parties. No, it was the focus of the sentencing memorandum. You referred to page 225 to 229. That's the sentencing memorandum, is it not? Right, but defense counsel repeatedly said this was the elephant in the room, as the government just said. That was the issue that was lurking. And Mr. Dawson presented substantial reasons to vary, including that his career offender predicates were minor drug offenses. And we know that the commission has indicated or suggested that Congress amend the career offender guidelines so that you don't get an increase, 21 to 27, to 188 to 235, based on three prior drug offenses. They've recommended that Congress amend that, and I know that we're not there yet, but that's a significant reason for the court to have varied. And this judge... I'm sorry. Go ahead. Regarding the CSA and the match, if we were to send it back, it's a pure question of law. That seems like a waste of time. Why wouldn't we just get some supplemental briefing on these issues before us? I think it's...the case law supports our position, actually. Daniel says that attempt under A30 requires intent, plus a substantial step, which has put us right into the Nasir world. But I'm saying you're telling us things that haven't been in the briefing. We asked you to address it at argument. We didn't ask you to brief it. But instead of remanding it, if we have any concern about whether we agree with your position or not, supplemental briefing would really I think remand for Rule 32 is a necessary thing. I think if you find that the CSA applies, you should allow the parties to brief the question of whether there's a categorical match. Because it may not just be the simple question of matching the word distribution in both offenses. There may be more and it may require an evidentiary hearing. An evidentiary hearing? I think there could be a hearing on is there a categorical match between the Pennsylvania statute and the federal definitions. If you're applying the CSA definitions to the guidelines What evidence would, I mean, in this theoretical hearing, what evidence would you put on? We've had hearings on this issue in the District Court in the Western District of Pennsylvania. And I'm aware of hearings in the Eastern District of Pennsylvania when the courts are looking at the CSA definitions and applying them to the guideline terms. So it has happened. No, no, I want you to take a step. Tell me. Because on a question of law, I don't understand. I mean, hearing the court and the lawyers, yeah, but you said evidentiary. We've had hearings on this with expert witnesses talking about what do these definitions really mean. And I'm not suggesting that would happen in that case. I'm just saying that's one reason why perhaps briefing in the appellate court is just not the right avenue. I think remanding it to the District Court, if you were to hold the CSA applies or if you were just to assume without deciding, remanding Did you put on linguists or did you get Brian Garner? That's a good idea, Your Honor. We may try to retain him as an expert in this case. But again, I'm not suggesting that that's the way this would go. I mean, it's just it's possible and that's why I think briefing on a brand new issue in the appellate court is not normally the way we do things because other things could happen in the District Court. Other arguments could be developed in the first instance and then they're presented to you fully and fairly. Judge Rendell? I'm fine, thank you. Thank you, Your Honors. Thank you so much. We'll take the matter under advisement and of course we thank counsel for their fine job. Thank you. Have a good day.